## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RICHARD R. QUINT,
    *Plaintiff*,

    v.                                   Case No. 3:23-CV-226 (VAB)

C/O ROBINSON et al.,
    *Defendants*.

### INITIAL REVIEW ORDER

Richard Quint ("Plaintiff"), an unsentenced inmate housed within the custody of the Department of Correction ("DOC"), has filed a *pro se* verified civil rights Complaint asserting claims of constitutional violations on February 22, 2023. Specifically, Mr. Quint asserts claims of Fourteenth Amendment due process violations against Correctional Officer Robinson and Lieutenant Pierson (custodial staff at Corrigan Correction Center). He seeks both damages and a declaratory judgment.

The Prison Litigation Reform Act ("PLRA") requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the Complaint and conducted an initial review of these allegations under 28 U.S.C. § 1915A. Based on this review, the case shall proceed on (1) Mr. Quint's Fourteenth Amendment procedural due process claims against Correction Officer Robinson and Lieutenant Pierson in their individual capacities for

damages; and (2) his Fourteenth Amendment substantive due process claims based on his punitive placement in restrictive confinement against Correction Officer Robinson and Lieutenant Pierson in their individual capacities for damages.

All other claims are **DISMISSED without prejudice**.

## I.     FACTUAL BACKGROUND

The Court briefly summarizes the following background relevant to this matter.

Mr. Quint alleges that he is a pretrial detainee. He claims that Correctional Officer Robinson filed a false disciplinary report against him on January 1, 2023, that caused Mr. Quint to be denied his medication. According to the Complaint, Mr. Quint was then placed in the Restricted Housing Unit ("RHU") by Lieutenant Pierson for five days without a disciplinary hearing and released from the RHU on January 6, 2023. Mr. Quint's Complaint is dated January 9, 2023, but it was not filed until February 22, 2023.

## II.     DISCUSSION

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

The Court construes Mr. Quint's allegations to raise claims of Fourteenth Amendment Due Process Clause violations. Because Mr. Quint alleges that he was a pretrial detainee at the

time of the incidents set forth in the Complaint, the Fourteenth Amendment's substantive due

process guarantee, rather than the Eighth Amendment's prohibition against cruel and unusual

punishment, is applicable to any claims concerning his conditions in the RHU. *See Darnell* v.

*Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (holding that claims regarding conditions of confinement

brought by pretrial detainees in a state prison facility should be evaluated under the Fourteenth

Amendment's Due Process Clause because "[a] [p]retrial detainee[] ha[s] not been convicted of a

crime and thus may not be punished in any manner—neither cruelly and unusually nor

otherwise" (second alteration in original) (internal quotation marks omitted)).

### A.     Exhaustion

In light of the short amount of time between the date of the conduct underlying the

alleged Fourteenth Amendment violations and the filing date of the Complaint, the Court issued

an Order dated May 19, 2023, requiring Mr. Quint to show cause why this case should not be

dismissed for failure to his exhaust available administrative remedies, as required by the PLRA.

*See* Order, ECF No. 9. In that Order, the Court instructed Mr. Quint to explain what steps he

took to exhaust his remedies before filing his Complaint in this action. *See id.*; *see also* 42 U.S.C.

§ 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of

this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted.").

On May 25, 2023, Mr. Quint filed his response, which indicated he had a disciplinary

hearing on January 6, 2023, for his disciplinary charges, that his charges were dismissed for lack

of evidence, and that he could not therefore have filed any further appeal or grievance. Pl.'s

Response, ECF No. 10.

3

For purposes of initial review, the Court considers Mr. Quint's Fourteenth Amendment claims for allegedly punitive administrative segregation without due process of law to be exhausted. *See Otero v. Purdy*, No. 3:19-cv-01688 (VLB), 2021 WL 4263363, at *9 (D. Conn. Sept. 20, 2021) (where plaintiff's "grounds for his disciplinary appeal" were "essentially the same as his Fourteenth Amendment claim asserted in this action, . . . [p]laintiff's disciplinary appeal of his guilty finding sufficiently provided a fair and full opportunity for DOC to adjudicate the substance of his Fourteenth Amendment procedural due process claims" (internal quotation marks omitted)).[1]

Mr. Quint has not shown, however, that his disciplinary hearing considered his alleged medical deprivation. Nor does his response indicate that he filed any administrative remedies under Directive 9.6 concerning the alleged medical deprivation.[2] The exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002). Because exhaustion is mandatory under the PLRA, and Mr. Quint has not shown that he exhausted any claim arising from failure to provide him with medication or that he was precluded from doing so as contemplated by *Ross v. Blake*, 578 U.S. 632, 642–643 (2016), the Court will dismiss Mr. Quint's claims of medical indifference without prejudice on grounds of nonexhaustion. *See*

---

[1] This ruling is without prejudice to Defendants' filing of a motion to dismiss or for summary judgment on nonexhaustion grounds.

[2] Administrative Directive 9.6 provides a means "for an inmate to seek formal review for an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority." A.D. 9.6(1). Thus, Mr. Quint's claims against correctional staff are subject to the inmate grievance procedure set forth in A.D. 9.6. *See Wilson v. McKenna*, 661 F. App'x 750, 753 (2d Cir. 2016) (summary order) (affirming district court's dismissal based on inmate's failure to exhaust his claim against correction officer for deliberate indifference to medical needs under Administrative Directive 9.6).

*Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly"); *see also Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).[3]

### B.    Fourteenth Amendment

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A Fourteenth Amendment due process claim can be either procedural or substantive. While procedural due process prohibits deprivations of life, liberty or property without constitutionally adequate procedures, substantive due process protects these substantive rights "no matter the process employed by the State." *Case v. Anderson*, No. 16-cv-983 (NSR), 2017 WL 3701863, at *14 (S.D.N.Y. Aug. 25, 2017).[4]

---

[3] Exhaustion of administrative remedies is an affirmative defense on which the defendant bears the burden of proof. *See Jones*, 549 U.S. at 216. A district court may, however, dismiss a complaint for failure to exhaust administrative remedies where that failure appears on the face of the complaint. *See id.* at 214–15 (noting that a complaint may be dismissed *sua sponte* "when an affirmative defense . . . appears on its face"); *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (holding that "inmates are not required to specially plead or demonstrate exhaustion in their complaints," but noting that "a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement" (quoting *Jones*, 549 U.S. at 216)).

[4] In the prison setting, liberty interests protected by due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Unlike a sentenced inmate whose claim is analyzed under the Eighth Amendment, however, a pretrial detainee need not satisfy the "atypical and significant hardship" standard outlined in *Sandin*, in order to establish a protected liberty interest. *See Benjamin v. Fraser*, 264 F.3d 175, 188–89 (2d Cir. 2001).

1.      **Procedural Due Process**

A claim of a violation of procedural due process proceeds in two steps: "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam).

On a procedural due process claim, the court evaluates only the procedures used by the hearing officer to reach her decision. *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017). The level of procedural protection required depends on the purpose of the hearing. *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987).

For an administrative proceeding, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983). In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court applied the standard set forth in *Hewitt* to a due process claim asserted by inmates who had been classified for indefinite placement in a high security state prison for safety and security, rather than disciplinary reasons. *See id.* at 229. By contrast, for a disciplinary proceeding, an inmate is entitled to advance written notice of the charge, adequate time to prepare a defense, a written statement of the reasons for the disciplinary action taken, and a limited opportunity to present witnesses and evidence in his defense. *See Wolff v. McDonnell*, 418 U.S. 539, 561–70 (1974).

Accordingly, as Mr. Quint alleges that he received no due process prior to being placed in restrictive housing, the Court will permit him to proceed with a Fourteenth Amendment procedural due process claim against Correctional Officer Robinson and Lieutenant Pierson in their individual capacities for damages.

### 2.      Substantive Due Process: Punitive Restrictions

Mr. Quint alleges that he was subjected to punitive measures in violation of his Fourteenth Amendment rights. In the context of a pretrial detainee's claim over restrictive conditions of confinement, the Second Circuit has made clear that administrative segregation measures do not "violate substantive due process where prison officials subject[] pretrial detainees to such measures in response to specific evidence that those detainees posed a risk to institutional security, and where the measures were not excessive in relation to that purpose." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 56 (2d Cir. 2017). Due process standards are violated when prison officials do not allow for individualized consideration of the pretrial detainee's actual threat to institutional security prior to subjecting him to segregation and where the conditions imposed are not reasonably related to legitimate governmental objectives. *See id.* at 57–58.

Accordingly, in light of the disciplinary charges being dismissed for lack of evidence, *see* Disciplinary Process Summary Report, ECF No. 10 at 11, Mr. Quint raises a plausible Fourteenth Amendment substantive due process claim based on punitive restrictive confinement against Correctional Officer Robinson and Lieutenant Pierson in their individual capacities for damages.

### 3.      Substantive Due Process: Deliberate Indifference to Conditions

The Court also considers whether Mr. Quint has alleged a plausible Fourteenth Amendment substantive due process claim based on deliberate indifference to his conditions in the RHU. For such a Fourteenth Amendment claim, a plaintiff must first satisfy "an objective element that the conditions of confinement, "either alone or in combination," deprive an inmate of a basic human need or pose an unreasonable risk of harm to the inmate. *Darnell*, 849 F.3d at

30. This inquiry focuses on the "severity and duration" of the conditions, "not the detainee's resulting injury." *Id.* (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015)). The Supreme Court has identified the following basic human needs of a person in custody: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions and exercise. *See Jusino v. Rinaldi*, No. 3:18-cv-2004 (MPS), 2019 WL 1596574, at *4 (D. Conn. Apr. 15, 2019) (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)).

Under the Fourteenth Amendment, a pretrial detainee must also establish a "*mens rea*" element: he must show that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

Here, Mr. Quint has not alleged facts to suggest that his administrative segregation plausibly subjected him to deprivation of a basic human right or exposure to an unreasonable risk of harm.

Accordingly, he has not alleged a plausible Fourteenth Amendment substantive due process violation based on deliberate indifference to his conditions of confinement, and this claim will be dismissed.

### C.    Official Capacity Claims

Mr. Quint seeks declaratory judgments that Defendants have violated his rights. To the extent that he seeks damages against Defendants, who are state employees, in their official capacities, such claims must be dismissed as barred by the Eleventh Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56. "[A] plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).

Mr. Quint's request for declaratory judgments in response to the defendants' alleged violations of his rights in the past are barred because the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see also Green v. Mansour*, 474 U.S. 64, 71 (1985). Likewise, he has not stated any plausible ongoing violation of his federal or constitutional rights so as to support any official capacity claim for injunctive relief. *See Henderson v. Quiros*, No. 3:21-cv-1078 (VAB), 2021 WL 5359739, at *8 (D. Conn. Nov. 17, 2021) (dismissing official capacity claims absent any continuing or ongoing federal or constitutional violation).

### III.   ORDERS

The Court enters the following orders:

(1) The case **shall proceed** on (1) Mr. Quint's Fourteenth Amendment procedural due process claims against Correction Officer Robinson and Lieutenant Pierson in their individual capacities for damages; and (2) his Fourteenth Amendment substantive due process claims based on his punitive placement in restrictive confinement against Correction Officer Robinson and

Lieutenant Pierson in their individual capacities for damages. All other claims are **DISMISSED without prejudice**.

(2) The Clerk of Court shall verify the current work addresses for Correction Officer Robinson and Lieutenant Pierson with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint and attachments to them at their confirmed addresses by **August 18, 2023**, and report on the status of the waiver request by **September 22, 2023**. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk of Court shall send a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs and the Connecticut Office of the Attorney General.

(4) Defendants shall file their response to the Complaint, either an Answer or motion to dismiss, by **October 20, 2023**. If a Defendant chooses to file an Answer, the Defendant shall admit or deny the allegations and respond to the cognizable claims recited above. The Defendant may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **January 26, 2024**. Discovery requests need not be filed with the court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed by **March 1, 2024**.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Mr. Quint changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Mr. Quint must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Quint has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

(10) Mr. Quint shall utilize the Prisoner Efiling Program when filing documents with the court. Mr. Quint is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 28th day of July, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE